UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| EUGENE PAUL WATERS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Nos. 2:21-CV-042 |
| | ) | 2:18-CR-148 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Before the Court is Eugene Paul Waters' ("Petitioner's") *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Doc. 1; Criminal Docket ("Crim.") Doc. 622].[1] The United States has responded in opposition [Doc. 6], and Petitioner filed a reply [Doc. 10]. For the reasons below, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 622] will be **DENIED**.

**I.     BACKGROUND**

In January 2019, Petitioner and fifteen co-defendants were charged in a twenty-seven-count superseding indictment pertaining to conspiracy and distribution of 50 grams of more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance; conspiracy and distribution of "crack" cocaine, a Schedule II controlled substance; conspiracy and distribution of a quantity of a mixture and substance

---

[1] Document numbers not otherwise specified refer to the civil docket.

containing detectable amounts of cocaine, a Schedule II controlled substance; along with related gun charges. [Crim. Doc. 77]. Petitioner was named in three counts. [*See id*.].

On May 6, 2019, Petitioner entered into a plea agreement with the government. [Crim. Doc. 165]. Petitioner agreed to plead guilty to one count of conspiracy to distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), (b)(1)(A). [*See id*.] The plea agreement was signed by Petitioner and attorney Jim R. Williams ("Attorney Williams").

In his plea agreement, Petitioner acknowledged that early 2017, law enforcement began investigating a drug trafficking organization that distributed methamphetamine, cocaine, crack cocaine, and various other illegal drugs in the Tri-Cities area. The drugs were supplied out of Atlanta, GA and resold in the Eastern District of Tennessee for profit. On May 29, 2018, Petitioner give a *Mirandized* statement to law enforcement admitting to selling methamphetamine for approximately two years. Petitioner agreed to be held responsible for at least 150 grams but less than 500 grams of actual methamphetamine. Petitioner also stipulated that the U.S.S.G. § 2D1.1(b)(1) enhancement for possessing a firearm applied to his case. [*Id*. at 2-4]. The Court conducted a change of plea hearing on June 4, 2019. Although there is no transcript of that hearing in the record, the Court recalls

2

Case 2:18-cr-00148-RLJ-CRW   Document 656   Filed 09/21/22   Page 2 of 10   PageID #: 3199

conducting its standard colloquy with Petitioner and finding him competent to enter a guilty plea.[2]

The Presentence Investigation Report ("PSR") calculated a total offense level of 31 and a criminal history category of IV, resulting in a guideline range of 151 to 188 months. [Crim. Doc. 276, ¶ 79]. The PSR also noted that, but for Petitioner's plea agreement dismissing Count 27, he would have been exposed to a mandatory consecutive term of imprisonment of five years, which would have subjected him to a guideline range of 211 to 248 months. [*Id*. at ¶ 81].

The Government filed a notice of no objections to the PSR. [Crim. Doc. 306]. The Government also filed a sentencing memorandum wherein it concurred that the correct advisory guideline calculation was 151 to 188 months imprisonment and requested a sentence of 151 months. [Crim Doc. 464]. Petitioner, through counsel, also filed a notice of no objections to the PSR. [Crim. Doc. 283]. Petitioner, through counsel, filed a sentencing memorandum, also requesting a sentence at the bottom of the guidelines range, 151 months. [Crim. Doc. 474].

On February 25, 2020, the Court sentenced Petitioner to a total of 151 months' imprisonment and then five years of supervised release. [Crim. Doc. 522]. Petitioner did not file a direct appeal, but on February 9, 2021, he filed this timely § 2255 motion.

II.     **STANDARD OF REVIEW**

---

[2]Where, as here, the same judge considering the § 2255 motion also presided over the underlying proceedings, the judge may rely on his recollections of those proceedings. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013).

Under § 2255(a), a federal prisoner may move to vacate, set aside, or correct his judgment of conviction and sentence if he claims that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). As a threshold standard, to obtain post-conviction relief under § 2255, the motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A movant bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *See Reed v. Farley*, 512 U.S. 339, 353 (1994) (noting that the Petitioner had not shown that his ability to present a defense was prejudiced by the alleged constitutional error); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (addressing the harmless-error standard that applies in habeas cases alleging constitutional error). To obtain collateral relief under § 2255, a movant must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). A movant must prove that he is entitled to relief by a preponderance of evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). A

4

motion that merely states general conclusions of law, without substantiating the allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

Under Rule 8(a) of the Governing Rules, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted. Rules Governing Section 2255 Proceedings, Rule 8(a). If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts." *Valentine*, 488 F.3d at 333 (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). The Court **FINDS** no need for an evidentiary hearing in the instant case.

III. ANALYSIS

As an initial matter, Petitioner seems to raise one claim of ineffective assistance in this § 2255 motion: 1) that his counsel was grossly negligent in encouraging Petitioner to sign a plea agreement and misadvising him about the sentencing guidelines and consequences of pleading guilty. [Doc. 1; Crim. Doc. 622].

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. A criminal defendant's Sixth Amendment right to counsel necessarily implies

5

the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard for proving ineffective assistance of counsel, a movant must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id*.

To prove deficient performance, the movant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688. A movant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). It is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690.

The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id*. at 687. The movant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" *Id*. at 703. Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Petitioner's argument fails at *Strickland's* second step. Petitioner's primary argument for ineffective assistance of counsel is that his counsel misadvised about his guidelines range which caused Petitioner to take a plea agreement. [Doc. 10]. Petitioner alleges that he was told his guidelines range would be 135 to 151 months' imprisonment if he signed the Plea Agreement. He also argues that his counsel erroneously told him that he could not appeal his sentence due to the language in the Plea Agreement. [*Id*.].

A defendant "has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Jones v. Barnes,* 463 U.S. 745, 751 (1983). The Court notes that Petitioner agrees that he signed the Plea Agreement knowingly and voluntarily. [*Id*.]. However, he claims that the terms were changed after he signed. The record contradicts this claim and, thus, it is not credited. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). The Plea Agreement clearly states that Petitioner was facing a mandatory minimum sentence of 10 years up to Life [Crim. Doc. 165, p. 1], that a sentencing enhancement would apply to him [*Id*. at 4], and that the Court would determine Petitioner's sentence after considering everything pursuant to 18 U.S.C. § 3553 [*Id*. at 5].

Petitioner also agreed that "[a]ny estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court…" [*Id*.]. "[E]ven if counsel gives a defendant erroneous information, a defendant is not entitled to relief if the misinformation is 'directly refuted on the record'" during the plea colloquy. *Cadavid-Yepes v. United States*, 635 F. App'x 291, 299 (6th Cir. 2016) (quoting *United States v. Todaro*, 982 F.2d 1025, 1029 (6th Cir. 1993)). A proper

7

plea colloquy, as was held in this case, "cure[s] any misunderstanding [a defendant] may have had about the consequences of his plea." *Id*. at 299–300 (*quoting Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999). Even if Petitioner's contention that the Plea Agreement contained an advisory guidelines range of 135 to 151 months were true, Petitioner cannot establish prejudice since he was sentenced to 151 months, which is within that projected guidelines range. Thus, Petitioner is not entitled to relief as to this claim.

Second, Petitioner faults counsel for failing to advise him about his right to appeal. In the context of an appeal, there is a long-established rule "that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). In a case such as this, where Petitioner neither told his attorney to file an appeal nor told him not to file an appeal, courts must evaluate the attorney's performance by asking whether the attorney "consulted" with the defendant about the benefits and drawbacks of filing an appeal. *Id.* at 478. Consultation occurs when the attorney "advis[es] the defendant about the advantages and disadvantages of taking an appeal, and mak[es] a reasonable effort to discover the defendant's wishes." *Id.* If consultation has occurred, then "[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's *express instructions* with respect to an appeal." *Id.* (emphasis added). Here, Petitioner admits that consultation occurred because he states his attorney advised him that he had forfeited his right to appeal by signing the Plea Agreement. [Doc. 10]. Counsel did not misadvise Petitioner about the appellate waiver contained in the Plea Agreement. Further, the Court advised Petitioner at sentencing that he could appeal his sentence and that the Clerk's

8

Office could assist him with filing an appeal, curing any mis-advice from counsel regarding an appeal.

Petitioner has also not alleged that he would not have pled guilty or proceeded to trial but for counsel's mis-advice. Petitioner thus cannot bear his burden of showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Accordingly, Petitioner's claim [Doc. 1; Crim. Doc. 622] will be **DENIED** as the record directly contradicts Petitioner's claims, and Petitioner has not shown that he was prejudiced by any alleged ineffectiveness of counsel.

## IV. CONCLUSION

For the reasons above, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 622] will be **DENIED** and **DISMISSED**.

## V. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." *Id.* The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id.*

A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of

9

Case 2:18-cr-00148-RLJ-CRW   Document 656   Filed 09/21/22   Page 9 of 10   PageID #: 3206

the claims debatable or wrong. *Slack*, 529 U.S. at 484. Having examined Petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of those claims was debatable or wrong. Therefore, the Court will **DENY** issuance of a certificate of appealability.

A separate judgment will enter.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge